# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BRIAN HALL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>FORBES MEDIA LLC, an Delaware corporation,<br><br>    Defendant. | Case No. 2:15-cv-13844<br><br>Hon. George Caram Steeh |

## **FORBES MEDIA LLC'S MOTION TO STAY ACTION**

Defendant Forbes Media LLC ("Forbes" or "Defendant") hereby moves for an order staying all proceedings in this action. There is currently an abundance of pending litigation over very critical issues pertaining to Michigan's Video Rental Privacy Act, M.C.L. § 445.1711-1715 (the "VRPA"), not the least of which is the pending case before the Sixth Circuit Court of Appeals in *Coulter-Owens v. Time, Inc.*, Case No. 16-1321. Yet Plaintiff Brian Hall ("Plaintiff") waited years after all this other litigation to file the instant case against Forbes. The issue to be decided by the Sixth Circuit – whether sales of magazines through third-party resellers constitute sales "at retail" within the meaning of the "VRPA – will determine a key issue in this case because Plaintiff purchased his subscription to *Forbes* magazine from a third-party reseller. If the Sixth Circuit affirms this Court's decision on appeal, it could dispose of Plaintiff's claims in this action, without the need for

further expenditure of time and expense by the parties or the Court, conserving such resources.

The requested stay would also allow determination of other critical issues that could alter or dispose of this action, including: (i) the interpretation of terms in the VRPA by the Michigan Supreme Court in the matter certified by the Ninth Circuit in *Deacon v. Pandora Media, Inc.;* (ii) the determination of the impact and retroactive effect of the newly passed Act in Michigan amending the VRPA, PA 92, by courts in this and other jurisdictions considering the issue in cases that are further along procedurally than the instant case; and (iii) the determination by the Ninth Circuit in the recently remanded *Spokeo v. Robins* case whether the statutory violation at issue there constitutes a concrete injury.  Resolution of these other issues could also dispose of some or all of the claims of Plaintiff and the putative class, simplifying, or eliminating the issues and claims to be decided.  In support of this Motion, Forbes is contemporaneously filing a Brief, which is incorporated herein.

Pursuant to E.D. Mich. Local R 7.1(a), counsel for Defendant conferred with counsel for Plaintiff, who informed Defendant that he intended to oppose this motion.

Dated: May 23, 2016

Arthur T. O'Reilly
HONIGMAN MILLER SCHWARTZ
AND COHN
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313-465-7628
aoreilly@honigman.com

By:   /s/ Sharon L. Schneier

Sharon L. Schneier
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
sharonschneier@dwt.com

Sean M. Sullivan
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St.
Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsmile: (213) 633-6899
seansullivan@dwt.com

Counsel for Defendant Forbes Media
LLC

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BRIAN HALL, individually and on behalf of all others similarly situated, | Case No. 2:15-cv-13844 |
| Plaintiff, | Hon. George Caram Steeh |
| v. | |
| FORBES MEDIA LLC, an Delaware corporation, | |
| Defendant. | |

# FORBES MEDIA LLC'S MEMORANDUM IN SUPPORT
# OF MOTION TO STAY ACTION

# **TABLE OF CONTENTS**

ISSUE PRESENTED ................................................................................. ii

CONTROLLING OR MOST IMPORTANT AUTHORITY ................................. iii

TABLE OF AUTHORITIES ...................................................................... v

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ................................................................................... 5

    A.    The Action. ................................................................. 5
    B.    There Are Multiple Issues Currently Before Higher Courts That Are
        Dispositive of Plaintiff's Claims ................................................. 6

ARGUMENT ...................................................................................... 12

    A.    The Court Should Stay This Case ........................................ 12

        1.    The Potential Dispositive Effect of the Sixth Circuit's Decision (and
                Other Cases That May Get Decided During the Term of the Stay)
                Warrants a Stay ......................................................... 14
        2.    A Stay Will Conserve Judicial Resources ................................. 18
        3.    Plaintiff (and the Putative Class) Will Not Suffer Harm From a Stay;
                Without a Stay Both Parties Will Suffer Harm ........................... 19
        4.    Public Interest Favors a Stay ............................................. 21

CONCLUSION .................................................................................... 22

## <u>ISSUE PRESENTED</u>

(1)     Should the Court stay all proceedings in the present case pending a decision by the Sixth Circuit Court of Appeals in *Coulter-Owens v. Time, Inc.*, Case No. 16-1321, as to whether sales of magazines through third-party resellers constitute sales "at retail" within the meaning of Michigan's Video Rental Privacy Act, M.C.L. § 445.1711-1715 (the "VRPA"), which may provide controlling precedent regarding whether Plaintiff can pursue his claims where the sales to Plaintiff were made through a third-party reseller?  It is anticipated that during the period of the stay other core issues relating to the constitutionality of and recent revisions to the VRPA statute will likewise be addressed.

     Defendant's Answer:  Yes.

# CONTROLLING OR MOST IMPORTANT AUTHORITY

**Page(s)**

**Federal Cases**

*Baker v. Adams Cnty./Ohio Valley Sch. Bd.*,
　310 F.3d 927 (6th Cir. 2002) ..............................................................................19

*Beydoun v. Holder*,
　No. 14-CV-13812, 2015 WL 631948 (E.D. Mich. Feb. 13, 2015) .............13, 14

*Busk v. Integrity Staffing Solutions, Inc.*,
　No. 2:10-CV-1854-RLH-NJK, 2013 WL 4786254 (D. Nev.
　Sept. 5, 2013) .......................................................................................................20

*Coal. to Defend Affirmative Action v. Granholm*,
　473 F.3d 237 (6th Cir. 2006) ..............................................................................22

*Clinton v. Jones*,
　520 U.S. 681 (1997) .............................................................................................13

*Coulter-Owens v. Time, Inc.*,
　No. 12-CV-14390, 2016 WL 612690 (E.D. Mich. Feb. 16, 2016) ........1, 6, 7, 14

*Halaburda v. Bauer Pub. Co.*,
　LP, No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6,
　2013) .................................................................................................................9, 17

*Hillson v. Kelly Services*,
　No. 15-CV-10803, 2015 WL 4488493 (E.D. Mich. July 15,
　2015) ...................................................................................................13, 14, 17

*Michael v. Ghee*,
　325 F. Supp. 2d 829 (N.D. Ohio 2004) ...............................................................19

*Monaghan v. Sebelius*,
　No. 12-15488, 2013 WL 3212597 (E.D. Mich. June 26, 2013) ...................13, 19

*Ohio Envtl. Council v. U.S. Dist. Court*,
　S. Dist. of Ohio, E. Div., 565 F.2d 393, 396 (6th Cir. 1997) .............................13

*Provo v. Rady Children's Hosp. San Diego*,
   15-CV-0081, 2015 WL 6144029 (S.D. Cal. July 29, 2015)........................13, 18

*Spokeo v. Robins*.
   2016 WL 2842447 (U.S. May 16, 2016)......................................................*passim*

**Pending Cases**

*Boelter v. Advance Magazine Publishers Inc.*,
   Case No. 15-CV-05671-NRB (S.D.N.Y.) ............................................3, 8, 10, 16

*Boelter v. Hearst Communications, Inc.*,
   Case No. 15 Civ. 03934 (AT) (S.D.N.Y.) ..........................................................10

*Coulter-Owens v. Time, Inc.*,
   Case No. 16-1321 (6th Cir.).........................................................................*passim*

*Deacon v. Pandora Media, Inc.*,
   Case No. 12-17734 (9th Cir.)..........................................................................*passim*

*Deacon v. Pandora Media, Inc.*,
   Case No. 151104 (Mich. S.C.).................................................................2, 7, 15

*Edwards v. Hearst Communications, Inc.*, Case No. 15 Civ. 09279
   (AT) (S.D.N.Y.) ................................................................................................10

**State Statutes**

Michigan's Video Rental Privacy Act, M.C.L. § 445.1711-1715...................*passim*

**Constitutional Provisions**

U.S. Const.
   amend. I...............................................................................................................10
   art. III ...........................................................................................................*passim*

iv

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Baker v. Adams Cnty./Ohio Valley Sch. Bd.*,
  310 F.3d 927 (6th Cir. 2002) ...........................................................................19

*Beydoun v. Holder*,
  No. 14-CV-13812, 2015 WL 631948 (E.D. Mich. Feb. 13, 2015) .............13, 14

*Busk v. Integrity Staffing Solutions, Inc.*,
  No. 2:10-CV-1854-RLH-NJK, 2013 WL 4786254 (D. Nev.
  Sept. 5, 2013) ...................................................................................................20

*Clinton v. Jones*,
  520 U.S. 681 (1997) ..........................................................................................13

*Coal. to Defend Affirmative Action v. Granholm*,
  473 F.3d 237 (6th Cir. 2006) ............................................................................22

*Coulter-Owens v. Time, Inc.*,
  No. 12-CV-14390, 2016 WL 612690 (E.D. Mich. Feb. 16, 2016) ........1, 6, 7, 14

*Duchene v. Westlake Serv., LLC*,
  2:13-CV-01577, 2015 WL 5947669 (W.D. Pa. Oct. 13, 2015) ..................13, 18

*Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity
  Corp.*,
  CV 15-04767-AB, 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015).....................13

*Halaburda v. Bauer Pub. Co.*,
  LP, No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6,
  2013) ..............................................................................................................9, 17

*Hillson v. Kelly Services*,
  No. 15-CV-10803, 2015 WL 4488493 (E.D. Mich. July 15,
  2015) ....................................................................................................13, 14, 17

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)...........................................................................................21

*Larson v. Trans Union, LLC*,
    12-CV-05726-WHO, 2015 WL 3945052 (N.D. Cal. June 26,
    2015) ............................................................................................................13, 18

*Michael v. Ghee*,
    325 F. Supp. 2d 829 (N.D. Ohio 2004) ............................................................19

*Mobley v. City of Detroit*,
    938 F. Supp. 2d 688 (E.D. Mich. 2013) ...........................................................19

*Monaghan v. Sebelius*,
    No. 12-15488, 2013 WL 3212597 (E.D. Mich. June 26, 2013)..................13, 19

*Ohio Envtl. Council v. U.S. Dist. Court*,
    S. Dist. of Ohio, E. Div., 565 F.2d 393, 396 (6th Cir. 1997) ...........................13

*Patel v. Trans Union, LLC*,
    308 F.R.D. 292 (N.D. Cal. 2015).......................................................................13

*Provo v. Rady Children's Hosp. San Diego*,
    15-CV-0081, 2015 WL 6144029 (S.D. Cal. July 29, 2015).........................13, 18

*Ramirez v. TransUnion*,
    No. 12-cv-00632 (N.D. Cal. June 22, 2015)..................................................13, 21

*Salvatore v. Microbilt Corp.*,
    No. 4:14-CV-1848, 2015 WL 5008856 (M.D. Pa. Aug. 20,
    2015) ................................................................................................................13

*Spokeo v. Robins*.
    2016 WL 2842447 (U.S. May 16, 2016)....................................................*passim*

*Stone v. Sterling Infosystems, Inc.*,
    2:15-CV-00711-MCE, 2015 WL 4602968 (E.D. Cal. July 29,
    2015) ................................................................................................................13

*Williams v. Elephant Insurance Co.*,
    No. 15-CV-00119, 2015 WL 3631691 (E.D.Va. May, 27, 2015).....................13

**State Cases**

*Allstate Ins. Co. v. Faulhaber*,
    157 Mich. App. 164 (1987) ..................................................................................9

vi

*Kelly Servs., Inc. v. Treasury Dept.*,
   296 Mich. App. 306 (2012) ...................................................................9

*People v. Sheeks*,
   244 Mich. App. 584 (2001) ...................................................................9

*Romein v. Gen. Motors Corp.*,
   168 Mich. App. 444 (1988) ...................................................................9

**Pending Cases**

*Boelter v. Advance Magazine Publishers Inc.*,
   Case No. 15-CV-05671-NRB (S.D.N.Y.) ...........................................3, 8, 10, 16

*Boelter v. Hearst Communications, Inc.*,
   Case No. 15 Civ. 03934 (AT) (S.D.N.Y.) ........................................10

*Coulter-Owens v. Time, Inc.*,
   Case No. 16-1321 (6th Cir.)...........................................................*passim*

*Deacon v. Pandora Media, Inc.*,
   Case No. 12-17734 (9th Cir.)...........................................................*passim*

*Deacon v. Pandora Media, Inc.*,
   Case No. 151104 (Mich. S.C.)...........................................................2, 7, 15

*Edwards v. Hearst Communications, Inc.*, Case No. 15 Civ. 09279
   (AT) (S.D.N.Y.) ...................................................................................10

**State Statutes**

Michigan's Video Rental Privacy Act, M.C.L. § 445.1711-1715...................*passim*

**Rules**

Fed. R. Civ. P.
   23.........................................................................................................17
   26(f).......................................................................................................6

**Constitutional Provisions**

U.S. CONST.
   amend. I...............................................................................................10
   art. III ...............................................................................................*passim*

## PRELIMINARY STATEMENT

Defendant Forbes Media LLC ("Forbes") hereby moves for an order staying all proceedings in this action. There are myriad issues pertaining to the constitutionality of and interpretation of Michigan's Video Rental Privacy Act, M.C.L. § 445.1711-1715 (the "VRPA") currently being decided in active cases in other courts, including before the Sixth Circuit Court of Appeals in *Coulter-Owens v. Time, Inc.*, Case No. 16-1321. Meanwhile Plaintiff Brian Hall ("Plaintiff") waited years after all this other litigation to file the instant case against Forbes. The Sixth Circuit has been asked to determine whether sales of magazines through third-party resellers constitute sales "at retail" within the meaning of the VRPA. On February 16, 2016, this same District Court granted defendant Time, Inc.'s motion for summary judgment, finding that sales of subscriptions to defendant's magazines through third-party websites were not sales "at retail" for purposes of the VRPA. *Coulter-Owens v. Time, Inc.*, No. 12-CV-14390, 2016 WL 612690, at *3 (E.D. Mich. Feb. 16, 2016). The plaintiff in that case, on behalf of herself and the certified class of magazine purchasers, timely appealed that decision to the Sixth Circuit.

This case raises an identical issue to the one on appeal in *Coulter-Owens v. Time, Inc.* Specifically, while Plaintiff in his Complaint alleges that he purchased his subscription to *Forbes* magazine directly from Forbes (Complaint ¶ 30),

Forbes' records show that Plaintiff actually purchased his subscription from a third-party reseller.  *See* Declaration of Nina LaFrance, ¶ 4 attached as Exhibit 1 hereto ("LaFrance Decl.").  Thus, the Sixth Circuit's decision as to whether such sales through a third-party reseller constitute sales "at retail" for purposes of the VRPA could be dispositive of Plaintiff's claims in this case.  Briefing in *Coulter-Owens v. Time, Inc.* is set to conclude by mid-August of this year, and it is possible that a ruling could come before the end of the year, or early next year if oral argument is granted.  Any delay in prosecuting this case will therefore be fairly limited.

       In addition to providing time for resolution of what could certainly be a dispositive issue, a stay would also allow for resolution of a number of other issues that could impact this case.  For example, the Michigan Supreme Court on April 27, 2016, heard oral arguments in *Deacon v. Pandora Media, Inc.*, Case No. 151104, a case certified to it by the Ninth Circuit Court of Appeals.  *See Deacon v. Pandora Media, Inc.*, Case No. 12-17734, (9th Cir.), Dkt. No. 40; Declaration of Sharon L. Schneier  attached as Exhibit 1 hereto ("Schneier Decl."), ¶ 2, Ex. A, (attaching Michigan Supreme Court Docket in *Deacon v. Pandora Media, Inc.*, Case No. 151104).  The Ninth Circuit's certification order and briefs filed to date appear to have focused on the interpretation of the terms "renting," "lending" and "borrows" as they are used in the VRPA, §§ 445.1711-15.  *See Deacon v. Pandora*

2

*Media, Inc.*, Case No. 12-17734, (9th Cir.), Dkt. No. 40, at 12.  But as the Ninth

Circuit's certification order made clear, the Michigan Supreme Court is not

restricted in its consideration of the issues and problems in its analysis of the

record certified in the case before it.  *See id.*, quoting and citing *Martinez v.*

*Rodriguez*, 394 F.2d 156, 159 n.6 (5th Cir. 1968).  As outlined in the Ninth

Circuit's certification order, one of the bases for the district court's dismissal of the

plaintiff's claims in the underlying case on appeal was that the plaintiff failed to

allege Pandora "sells" sound recordings because "the sale is between the user and a

third-party vendor, not Pandora."  *See id.* at 7.  To the extent the Michigan

Supreme Court decides to weigh in on the issue whether purchases made from a

third-party vendor constitute sales "at retail," this issue would of course impact the

analysis in this case and the issue currently before the Sixth Circuit.

A stay would also allow for further development of the law regarding the

injury-in-fact requirement of Article III as it relates to the VRPA and whether

Plaintiff's alleged injury is sufficient for him to have standing to prosecute the

action.  The Michigan legislature just recently passed, and on May 2, 2016,

Governor Snyder signed into law, a new Act amending the VRPA.  *See* Schneier

Decl. ¶ 3, Ex. B (attaching copy of Act).  The Act, PA 92, amended the VRPA, in

part, to require that a plaintiff suffer actual damages in order to bring a claim under

the VRPA, and removed the right to recover statutory damages in lieu of actual

damages.  It is expected, and has been argued already in cases from other jurisdictions (*See Boelter v. Advance Magazine Publishers Inc.*, Case No. 15-CV-05671-NRB, S.D.N.Y., Dkt. Nos. 41 and 43), that defendants will argue that the new Act applies retroactively to bar claims of plaintiffs in existing litigation that have not, and cannot allege actual damages.

Further, on May 16, 2016, in a long-awaited decision, the Supreme Court reversed and remanded the Ninth Circuit's decision in *Spokeo v. Robins*.  2016 WL 2842447 (U.S. May 16, 2016).  The central issue in *Spokeo* was whether a violation of a statutory right alone is sufficient injury-in-fact to create Article III standing.  Rather than address this issue squarely, the Supreme Court reversed and remanded to the Ninth Circuit, finding that the Ninth Circuit's analysis of the injury-in-fact requirement was incomplete.  *Id.* at **1-2, 8.  Taking no position on whether the Ninth Circuit's ultimate conclusion that the plaintiff in that case adequately alleged an injury in fact, the Supreme Court held that the Ninth Circuit failed to address whether the particular procedural violations alleged in that case entailed a degree of risk sufficient to meet the concreteness requirement, and remanded the case to the Ninth Circuit to make that determination.  *Id.* at *8.  The Ninth Circuit's decision whether the bare procedural violation at issue in that case constitutes a "concrete" injury sufficient to meet the injury-in-fact requirement

4

could be applied to Plaintiff's allegations here – which, despite conclusory allegations of damage, allege nothing more than a pure procedural violation.

Determination of each these issues will drastically alter the landscape of VRPA litigation in Michigan and elsewhere, including with respect to the claims currently brought by Plaintiff in this action. Because there are expected developments in the law that will directly impact the viability of Plaintiff's claims, a stay of this matter is appropriate.

## BACKGROUND

### A.     The Action.

Plaintiff initiated this action on October 30, 2015. In his Complaint, Plaintiff alleges that he purchased a one-year subscription to *Forbes* magazine directly from Forbes in August 2009. Complaint ¶ 30. Yet, despite Plaintiff's allegation to the contrary, Forbes' records definitively show that Plaintiff actually purchased his subscription to *Forbes* from a third-party reseller. LaFrance Decl., ¶¶ 3-4. Plaintiff further alleges that Forbes, in violation of the VRPA, sold information about him, including his full name, the title of the magazine he subscribed to and his home address, to data miners and other unrelated third party companies. *See* Complaint ¶¶ 2, 34, 36. Plaintiff also in conclusory fashion alleges that he suffered "concrete economic harm" – a clear nod to the case law surrounding proof of injury-in-fact – as a result of Forbes' actions in the form of

5

monies paid to Forbes in exchange for the magazine subscription – stating that he would not have purchased the subscription had he known of Forbes' practices. Complaint ¶ 38.

Since Plaintiff filed his Complaint, this case has been at procedural stand-still, while the parties discussed a potential resolution. Schneier Decl. ¶ 4. Unable to resolve the matter, Forbes is filing its answer contemporaneously with this motion, and absent entry of a stay, the parties will be proceeding with litigating this matter. The parties have not yet held their Rule 26(f) conference of counsel and neither party has served any written discovery or produced documents. Schneier Decl. ¶ 4. At the outset of the action, Forbes issued a litigation hold, ensuring that any documents in its possession and the possession of third parties that Forbes reasonably believed might possess discoverable evidence are retained for the pendency of this litigation. Schneier Decl. ¶ 5.

## B.   There Are Multiple Issues Currently Before Higher Courts That Are Dispositive of Plaintiff's Claims

There are currently a number of issues regarding the interpretation of the VRPA and the injury-in-fact requirement before higher courts and courts further along procedurally than this one, any of which could dispose of some or all the claims in this case. First, the Sixth Circuit is currently considering an appeal in a VRPA case decided by this Court. In *Coulter-Owens v. Time, Inc.*, No. 12-CV-14390, 2016 WL 612690, at *5 (E.D. Mich. Feb. 16, 2016), this Court granted

6

summary judgment for the defendant, Time, Inc., on plaintiff's VRPA claim.  The
Court found Time, Inc. did not sell its subscriptions to plaintiff and the class "at
retail" as that term is used in the VRPA because plaintiff and the class purchased
their subscriptions through third-party websites.  *Id.* at \*3.  Plaintiff in that case
timely appealed and the Sixth Circuit has set a briefing schedule that requires
Plaintiff to serve her opening brief on May 26, 2016, Time, Inc. to file its
responding brief by August 1, 2016, and any reply brief by Plaintiff to be filed by
August 18, 2016.  *See Coulter-Owens v. Time, Inc.*, Case No. 16-1321 (6th Cir.),
Dkt. No. 15, Order Setting Briefing Schedule.  It is currently unknown whether
oral argument will be requested or held, and when such argument will be
scheduled – although it is anticipated arguments will occur toward the end of 2016,
or the beginning of 2017.

Second, the Michigan Supreme Court on April 27, 2016, heard oral
arguments in *Deacon v. Pandora Media, Inc.*, Case No. 151104, a case certified to
it by the Ninth Circuit Court of Appeals.  *See* Schneier Decl. ¶ 2, Ex. A.  The Ninth
Circuit's certification order and briefs filed to date appear to have focused on the
interpretation of the terms "renting," "lending" and "borrows" as they are used in
the VRPA, §§ 445.1711-15.  *Deacon v. Pandora Media, Inc.*, Case No. 12-17734,
(9th Cir.), Dkt. No. 40, at 12.  But as the Ninth Circuit's certification order made
clear, the Michigan Supreme Court is not restricted in its consideration of the

issues and problems in its analysis of the record certified in the case before it.  *See id.*, quoting and citing *Martinez v. Rodriguez*, 394 F.2d 156, 159 n.6 (5th Cir. 1968).  As outlined in the Ninth Circuit's certification order, one of the bases for the district court's dismissal of the plaintiff's claims in the underlying case on appeal was that the plaintiff failed to allege Pandora "sells" sound recordings because "the sale is between the user and a third-party vendor, not Pandora."  *See id.* at 7.  To the extent the Michigan Supreme Court decides to weigh in on the issue whether purchases made from a third-party vendor constitute sales "at retail," this issue would of course impact the analysis in this case and the issue currently before the Sixth Circuit.

Third, the Michigan legislature passed and on May 2, 2016, Governor Snyder signed into law PA 92, a new Act amending the VRPA, in part, to require that a plaintiff suffer actual damages in order to bring a claim under the VRPA, and removed the right to recover statutory damages in lieu of actual damages.  It is expected, and has been argued already in cases from other jurisdictions (*see, e.g.*, *Boelter v. Advance Magazine Publishers Inc.*, Case No. 15-CV-05671-NRB, S.D.N.Y., Dkt. Nos. 41 and 43), that defendants will argue that the new Act applies retroactively to bar claims of plaintiffs in existing litigation that have not, and cannot allege actual damages.

8

The impact of this amendment to the VRPA is critical to the injury-in-fact requirement for standing, and there are strong arguments favoring retroactive application of the law.  For example, the fact that the Act purposefully states that it is "curative and intended to clarify" various aspects of the VRPA, including that "a civil action for a violation of those prohibitions may only be brought by a customer who has suffered actual damages as a result of the violation."  *See* Enacting Provisions of PA 92, § 2.  A "statutory enactment denominated as 'curative'…has been defined as legislation enacted to cure defects in prior law," and such laws are found to "operate retrospectively."  *Romein v. Gen. Motors Corp.*, 168 Mich. App. 444, 455 (1988); *see also Allstate Ins. Co. v. Faulhaber*, 157 Mich. App. 164 (1987) (act that "serves to clarify [] uncertainty is ordinarily given retroactive effect."); *People v. Sheeks*, 244 Mich. App. 584, 590 (2001); *Kelly Servs., Inc. v. Treasury Dept.*, 296 Mich. App. 306, 317 (2012).[1]  It also addresses one of the major hurdles courts in this District and elsewhere had faced when deciding whether there was an injury-in-fact requirement under the VRPA – the fact that the statute did not have explicit language requiring that a plaintiff suffer actual injury and provided "actual damages" as an alternative to statutory damages.  *See, e.g.*, *Halaburda v. Bauer Pub. Co.*, LP, No. 12-CV-12831, 2013 WL 4012827, at **4-5 (E.D. Mich. Aug. 6, 2013) ("Unlike the VPPA, a close reading of the VRPA

---

[1] In fact, the Michigan legislature understood that the Act's actual damages provision would have retroactive effect, since both a Michigan legislator and plaintiff's counsel in this case raised the retroactive effect of the Act in opposition to it (unsuccessfully).

9

reveals that it contains absolutely no language to require that a claimant suffer any actual injury apart from a violation of the statute, and plaintiffs have not alleged any specific injury apart from the statutory violation.")

The VRPA is also subject to pending First Amendment challenges, which has caused the Michigan Attorney General to intervene in pending cases against Hearst Communications, Inc. and Advance Magazine Publishers, Inc. d/b/a Condé Nast in the Southern District of New York. *See Boelter v. Hearst Communications, Inc.*, Case No. 15 Civ. 03934 (AT) (S.D.N.Y.), *Edwards v. Hearst Communications, Inc.*, Case No. 15 Civ. 09279 (AT) (S.D.N.Y.), and *Boelter v. Advance Magazine Publishers Inc.*, Case No. 15-CV-05671-NRB (S.D.N.Y.).

Finally, just last week, the Supreme Court issued its long-awaited decision in *Spokeo v. Robins*. The central issue in *Spokeo* was whether a violation of a statutory right alone is sufficient injury-in-fact to create the constitutional standing necessary to sue in federal court or whether one must show actual harm as well. While the case arose under the Fair Credit Reporting Act (FCRA), it had potential application in a wide variety of cases – including privacy cases such as this one – where the legislature created rights and provided for statutory damages (a) to quantify damages that otherwise would be amorphous and/or miniscule and,

10

accordingly, (b) to create incentives for private parties to enforce the statute and to thus compel compliance by those regulated.

The Supreme Court concluded the Ninth Circuit incompletely analyzed the injury-in-fact requirement, which requires a plaintiff to allege an injury that is both "concrete" and "particularized." 2016 WL 2842447 at **1-2, 8. The Ninth Circuit had held Plaintiff's claimed violation was sufficiently "particularized" because it affected Plaintiff individually. *Id.* at **4, 6. The Ninth Circuit failed, however, to address whether the claimed violation was sufficiently "concrete." *Id.* at **6-8.

The Supreme Court explained that "concrete" harm must be "real" and not "abstract" – but that that doesn't necessarily mean "tangible." *Id.* at *7. So "intangible" harms – like injury to reputation due to slander, or being barred from obtaining access to information Congress required to be public – can still be "concrete." *Id.* So can violations of statutory rights that create the "risk" of harm, as in situations where inaccurate information about a person circulates in violation of a statutory duty that, if received and relied upon, inures to the detriment of that person. *Id.* at *8. On the other hand, if the procedural statutory violation causes no harm or risk of harm – *e.g.*, failure to provide a required notice of consumer information where the information is nevertheless accurate, disclosure of information that is inaccurate but causes no risk of harm such as an incorrect zip code – there must be something more as a consequence of the violation that affects

11

the person who sues, for there to be injury in-jury-in-fact and thus standing.  *Id.*
The Supreme Court remanded for the Ninth Circuit to determine whether the
particular procedural FCRA violations alleged entail a degree of risk sufficient to
meet the concreteness requirement.  *Id.*

## **ARGUMENT**

### **A.    The Court Should Stay This Case.**

The Sixth Circuit's  ruling in the *Coulter-Owens v. Time, Inc.* case will
determine whether sales conducted through third-party resellers – such as those in
this case – constitute sales "at retail" for purposes of finding liability under the
VRPA.  If the Sixth Circuit affirms that they do not, Plaintiff's claims against
Forbes must be dismissed because he purchased his subscription through a third-
party reseller.

A stay is appropriate at this point because the parties have yet to start what is
expected to be expensive and time consuming discovery, motion practice or other
activities, and a stay could save the Court from wasting its resources when a
decision on any of the outstanding issues currently pending may extinguish subject
matter jurisdiction, or otherwise extinguish Plaintiff's causes of action in a matter
of months.  Moreover, a stay would not cause undue delay or prejudice and the
public interest favors a stay.  In fact, a stay would have the added benefit of
potentially allowing for resolution of the other issues described above currently

12

pending before the Michigan Supreme Court, other courts interpreting PA 92 and the Ninth Circuit. Allowing for the law to develop in these other courts before progressing with this case would avoid the potential of conflicting results. [2]

A District Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Ohio Envtl. Council v. U.S. Dist. Court*, S. Dist. of Ohio, E. Div., 565 F.2d 393, 396 (6th Cir. 1997). Stays can promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions. *See Clinton*, 520 U.S. at 706. "A district court may stay a case in order to allow a higher court in a separate case to settle issues of law that have bearing on the matter to be stayed." *Beydoun v. Holder*, No. 14-CV-13812, 2015 WL 631948, at *2 (E.D. Mich. Feb. 13, 2015). In considering a motion to stay, courts weigh four factors: (1) the potential of another case having a dispositive effect on the case to be stayed; (2) the judicial economy to be saved by waiting on a dispositive decision; (3) the hardship and prejudice to the party opposing the stay, given its duration; and (4)

---

[2] Numerous courts stayed cases pending the decision in *Spokeo*. *See e.g.*, *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, CV 15-04767-AB (JCX), 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015) (granting stay in TCPA case); *Duchene v. Westlake Serv., LLC*, 2:13-CV-01577, 2015 WL 5947669 (W.D. Pa. Oct. 13, 2015) (granting stay in TCPA case); *Patel v. Trans Union, LLC*, 308 F.R.D. 292 (N.D. Cal. 2015) (granting stay in FCRA case) *Salvatore v. Microbilt Corp.*, No. 4:14-CV-1848, 2015 WL 5008856 (M.D. Pa. Aug. 20, 2015) (granting stay in FCRA and FACTA case); *Stone v. Sterling Infosystems, Inc.*, 2:15-CV-00711-MCE, 2015 WL 4602968, at *1 (E.D. Cal. July 29, 2015) (granting stay in FCRA case); *Hillson v. Kelly Services*, No. 15-CV-10803, 2015 WL 4488493, (E.D. Mich. July 15, 2015) (granting stay in FCRA case); *Larson v. Trans Union, LLC*, 12-CV-05726-WHO, 2015 WL 3945052 (N.D. Cal. June 26, 2015) (granting stay in FCRA case); *Williams v. Elephant Insurance Co.*, No. 15-CV-00119, 2015 WL 3631691 (E.D.Va. May, 27, 2015) (granting stay in TCPA case); *Provo v. Rady Children's Hosp. San Diego*, 15-CV-0081, 2015 WL 6144029 (S.D. Cal. July 29, 2015) (granting stay in FDCPA case); *Ramirez v. TransUnion*, No. 12-cv-00632 (N.D. Cal. June 22, 2015) (granting stay in FCRA case). Those courts must now consider whether to continue the stays pending further proceedings in the Ninth Circuit, and while it is impossible to forecast the results, it is expected many of them may do so.

the public welfare. *Monaghan v. Sebelius*, No. 12-15488, 2013 WL 3212597, at *1

(E.D. Mich. June 26, 2013). Here, each factor weighs in favor of a stay pending a

determination of the Sixth Circuit appeal in *Coulter-Owens v. Time, Inc.*

### 1.   The Potential Dispositive Effect of the Sixth Circuit's Decision (and Other Cases That May Get Decided During the Term of the Stay) Warrants a Stay

Courts routinely stay cases when a higher court's decision in a different case

will provide controlling precedent and may prove dispositive in the stayed case.

*See, e.g.*, *Hillson*, 2015 WL 4488493, at *1. The expected decision need not

determine the entire case; a decision merits a stay if it will simplify a case by

having "precedential effect on questions of subject matter jurisdiction and . . .

resolv[ing] at least some of the claims before the Court." *Beydoun*, 2015 WL

631948, at *4. Here, the Sixth Circuit's decision, if it affirms this Court's grant of

summary judgment, would prove dispositive in this case.

The Sixth Circuit has been asked to determine whether sales made through

third-party resellers constitute sales "at retail" sufficient to equate to a violation of

the VRPA. *See Coulter-Owens v. Time, Inc.*, Case No. 16-1321 (6th Cir.), Dkt. No.

12, Plaintiff's Statement of Issues on Appeal. This Court, in granting summary

judgment for Time, Inc. ruled that such sales do not constitute sales "at retail."

*Coulter-Owens v. Time, Inc.*, No. 12-CV-14390, 2016 WL 612690, at *3 (E.D.

Mich. Feb. 16, 2016). If the Sixth Circuit affirms this decision, Plaintiff will have

14

to show that he purchased his subscription directly from Forbes, and not through a third-party reseller, in order to maintain an action under the VRPA. Plaintiff will not be able to make such a showing here.

Plaintiff alleges in his complaint that he purchased his subscription directly from Forbes. Complaint ¶ 30. Yet Forbes' records show that this is not the case. Plaintiff purchased his subscription from a third-party reseller – which is precisely what lead this Court to grant Time, Inc.'s motion for summary judgment. LaFrance Decl., ¶ 4. Thus, if the Sixth Circuit affirms this Court's decision in the *Time* matter, Plaintiff's claims should either be voluntarily dismissed, or dismissed pursuant to an early motion for summary judgment. And, absent substitution of a suitable class representative whose claims do not fail for the same reason as Mr. Hall's claims would, this entire action would be dismissed. Thus, the Sixth Circuit's decision will likely prove dispositive here.

A stay will also permit other courts considering issues potentially dispositive here to issue their decisions. The Michigan Supreme Court could address this same issue in the context of its consideration of the issues certified to it by Ninth Circuit in the *Deacon v. Pandora* case. While the specific issues certified to it did not include whether sales through third-party resellers should be considered sales "at retail," the determination that the purchases in question were made with another entity, not the defendant, was one of the bases the district court there used to

15

dismiss the claims against Pandora. *Deacon v. Pandora Media, Inc.*, Case No. 12-17734, (9th Cir.), Dkt. No. 40, at 12, at 7.

In addition, the determination of the impact of and retroactive effect of PA 92 also supports a stay. The statute makes clear that only a person that suffers actual injury, quantified by actual damages, may maintain an action under the VRPA. This statutory change is likely to bar multiple claims made by class members here – or at a minimum create standing hurdles impeding the determination of class certification for a number of class members. Litigation over whether the new statute applies retroactively, for which there are strong arguments, could extend for some time, although the issue has already been raised in some cases where briefing on the issues is complete. *See, e.g.*, *Boelter v. Advance Magazine Publishers Inc.*, Case No. 15-CV-05671-NRB, S.D.N.Y., Dkt. Nos. 41 and 43. Thus, to the extent these cases decide the issue during the pendency of a stay, they could provide guidance to this Court in reaching what may ultimately be a decision that disposes of Plaintiff's claims here.

Finally, the Ninth Circuit on remand in *Spokeo* may still reach a determination whether a plaintiff's allegation of a bare violation of a statute is sufficient for Article III standing. While a schedule for the remand is not yet known, the parties could move quickly to re-brief and argue the issue before the Ninth Circuit. The statute at issue in *Spokeo*, the FCRA, is similar to the VRPA

16

because courts have interpreted both statutes to grant a private right of action for a violation of the statute with no actual harm.  When combined with Fed. R. Civ. P. 23, these statutes allow plaintiffs to force companies to defend against class actions in which none of the class members have suffered an actual injury but the exposure to the defendant is great given the high statutory damages amount.

In *Hillson v. Kelly Services*, a court in this District found that a stay was warranted in a FCRA case because "*Spokeo* has the high potential to be completely dispositive of the instant case and because judicial economy favors a limited delay in awaiting the *Spokeo* decision."  2015 WL 4488493, at *1.  The court also found that *Spokeo* had "high potential to directly impact" the class because the question presented "bear[s] upon the issue of whether the proposed class members have Article III standing."  *Id.*

The Ninth Circuit on remand still has to determine whether the procedural violation at issue in that case constitutes a "concrete" injury.  Its decision could bear on the issues in this case given that the types of injury alleged by Plaintiff here -- monies paid to Forbes in exchange for the magazine subscription – have been found lacking in other cases.  *See, e.g.*, *Halaburda v. Bauer Pub. Co., LP*, 2013 WL 4012827, at *4 (finding that despite allegations of injury including dilution of the value of plaintiffs' personal information, as well as overpayment for subscriptions to magazines, "it was unclear…whether plaintiffs could articulate

17

any injury other than a violation of the statute.")  The court in *Provo v. Rady Children's Hospital* ordered a stay where "it [was] unclear whether Plaintiffs are able to establish an injury-in-fact without reliance upon a violation of the [Fair Debt Collection Practices Act (FDCPA)] to establish statutory damages."  2015 WL 6144029, at *1.  The court noted that while plaintiffs had alleged "emotional distress and mental anguish," they had not sufficiently alleged that it caused any harm.  *Id.*  Thus, the court stayed the case because the "only harm identified with certainty is a potential statutory violation."  *Id.*  Other courts have ordered stays in similar circumstances.  *See Duchene*, 2015 WL 5947669 at *1 ("[I]f *Spokeo* upends [the] present state of the law, questions surrounding Duchene's actual injury will slingshot to the forefront of this case, and Duchene's standing would be called into question."); *Larson*, 2015 WL 3945052 at *8 (staying proceedings where "[plaintiff's] ability to establish injury-in-fact without reliance on the FCRA's statutory damages provision has not been tested in this case and is far from certain.  Even if [plaintiff] himself could make a sufficient showing of actual harm to satisfy Article III, the record indicates that a significant portion of the putative class would not be able to do the same").

### 2.   A Stay Will Conserve Judicial Resources

The Court can save time and resources by staying this case.  "It makes little sense to undertake the herculean task of plodding through the motions when one

18

decision by the Supreme Court could invalidate the entire case." *Michael v. Ghee*, 325 F. Supp. 2d 829, 832-33 (N.D. Ohio 2004). The more complex a case is, the more a stay promotes judicial efficiency, especially where a higher court's ruling on a matter of law "could negate the need for [the court] to delve into the vast majority of the legal issues presented." *Id.*

Continuing with the case now may cause more work for the Court if its order granting summary judgment for Time, Inc. is modified or reversed on appeal because consideration of the same issue in this case would then have to be revisited. *See Monaghan*, 2013 WL 3212597, at *2 ("[I]t would be at odds with the notion of judicial economy for this Court to proceed in this case and risk reaching an ultimate resolution that is inconsistent with precedent the Sixth Circuit creates shortly thereafter."); *Mobley v. City of Detroit*, 938 F. Supp. 2d 688, 690 (E.D. Mich. 2013) (continuing with trial "would thwart judicial economy by wasting the time and resources of both the Court and all parties involved").

### 3. Plaintiff (and the Putative Class) Will Not Suffer Harm From a Stay; Without a Stay Both Parties Will Suffer Harm

A short stay will not prejudice or harm Plaintiff or the putative class. Though courts are sometimes wary of ordering a stay where the plaintiff continues to experience concrete harm during the stay, this Plaintiff claims no concrete, ongoing, harm. *See, e.g.*, *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002). Rather, Plaintiff seeks actual damages in the form of the

19

monies he already paid to Forbes for his subscription and statutory damages which he is either entitled to, or he is not.  Further, the Court has not yet set a trial date, there has been no discovery and there are no pending deadlines on the Court's calendar to be moved as a result of the stay.  Further, Forbes has instituted litigation holds for itself and those third parties that it reasonably believed may have discoverable evidence.  *See* Schneier Decl. ¶ 5.  There is no risk that a stay awaiting determination of the Sixth Circuit appeal and the myriad issues before various other courts will cause any additional harm.

Staying a case while awaiting potentially dispositive legal determinations is the best course of action where the defendant faces a costly class action.  *See Busk v. Integrity Staffing Solutions, Inc.*, No. 2:10-CV-1854-RLH-NJK, 2013 WL 4786254, at *2 (D. Nev. Sept. 5, 2013) (staying case for six months because the decision would "greatly simplify [the] case" and help the parties "know how to move forward and eventually reach a resolution").  The stay here would be for a similarly limited period of time with the same benefits as those gained by the court and the parties in *Busk*.  Briefing before the Sixth Circuit is expected to conclude by mid-August 2016.  *See Coulter-Owens v. Time, Inc.*, Case No. 16-1321 (6th Cir.), Dkt. No. 15, Order Setting Briefing Schedule.  Even if there are oral arguments, a decision could come as early as the end of 2016, or the beginning of 2017.

20

Brief stays without dire consequences to the parties may be required to serve compelling interests. *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) (finding that "delay[s] not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted" do not constitute unfair prejudice). If the outcome in any of the Sixth Circuit appeal permits this case to continue, the short delay will cause no undue hardship.

Conversely, if the Court does not issue a stay, both parties will suffer harm from potentially "unnecessary proceedings and expenses." *Ramirez*, 2015 WL 6159942 at *2. The Court and the parties have burdensome work ahead of them for a claim that may disappear by the end of the year. Both sides must commence discovery, brief class certification issues, prepare summary judgment papers and, depending on the Court's ruling on those various motions, begin the arduous task of preparing for a trial.

### 4.      Public Interest Favors a Stay

That the Sixth Circuit is likely to determine an issue that may dispose entirely of Plaintiff's claims here warrants a stay in itself. That these issues are coupled with additional issues before the Michigan Supreme Court, other courts considering the impact of PA 92, and the Ninth Circuit only further supports that a stay is warranted here. As the Sixth Circuit has held repeatedly, "the public interest lies in a correct application of the federal constitutional and statutory

21

provisions upon which the claimants have brought [a] claim." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006). The public interest is further served by a stay because it would conserve limited judicial resources. Staying the case will safeguard taxpayers' money and permit the court to focus on other cases that are important to the public's welfare and not at risk of being undone by a decision from the Sixth Circuit and other courts throughout the country in the coming months.

## CONCLUSION

For the reasons set forth above, defendant Forbes respectfully requests the Court grant its motion to stay all proceedings in this action.

Dated: May 23, 2016

| | |
|---|---|
| Arthur T. O'Reilly<br>HONIGMAN MILLER SCHWARTZ<br>AND COHN<br>2290 First National Building<br>660 Woodward Avenue<br>Detroit, MI 48226-3506<br>313-465-7628<br>aoreilly@honigman.com | By: ___/s/ Sharon L. Schneier___<br>Sharon L. Schneier<br>DAVIS WRIGHT TREMAINE LLP<br>1251 Avenue of the Americas<br>21st Floor<br>New York, New York 10020<br>Telephone: (212) 489-8230<br>Facsimile: (212) 489-8340<br>sharonschneier@dwt.com<br><br>Sean M. Sullivan<br>DAVIS WRIGHT TREMAINE LLP<br>865 S. Figueroa St.<br>Suite 2400<br>Los Angeles, California 90017<br>Telephone: (213) 633-6800<br>Facsmile: (213) 633-6899<br>seansullivan@dwt.com<br>Counsel for Defendant Forbes Media LLC |

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2016, I electronically filed the foregoing

documents with the Clerk of the Court via the ECF system, which shall send a

notification of such filing to all counsel of record.

Arthur T. O'Reilly
HONIGMAN MILLER SCHWARTZ
AND COHN
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313-465-7628
aoreilly@honigman.com

By: ___/s/ Sharon L. Schneier___

Sharon L. Schneier
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
sharonschneier@dwt.com

Sean M. Sullivan
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St.
Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsmile: (213) 633-6899
seansullivan@dwt.com

Counsel for Defendant Forbes Media
LLC

23