## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

BRIAN HALL, individually and on
behalf of all others similarly situated,

               Plaintiff,

    v.

FORBES MEDIA LLC, a Delaware
limited liability company,

               Defendant.

Case No.: 2:15-cv-13844

Hon. George Caram Steeh

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO STAY

i

## STATEMENT OF ISSUES PRESENTED

Should the Court stay this case where Defendant cites no anticipated cases that can have a potentially dispositive effect here and where a stay would harm Plaintiff and the Class?

Plaintiff Answers: No.

## CONTROLLING OR MOST IMPORTANT AUTHORITY

*Boelter v. Hearst Commc'ns, Inc.*, No. 15-cv-3934, 2016 WL 3369541
    (S.D.N.Y. June 17, 2016)

*Coulter-Owens v. Time, Inc.*, No. 12-cv-14390, 2016 WL 612690
    (E.D. Mich. Feb. 16, 2016)

*Deacon v. Pandora Media, Inc.*, Case No. 12-17734, (9th Cir.), Dkt. No. 39

*Deluca v. Blue Cross Blue Shield of Michigan*, No. 06-cv-12552,
    2007 WL 715304 (E.D. Mich. Mar. 7, 2007)

*Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180 (Mich. 2001)

*Halaburda v. Bauer Pub. Co., LP*, No. 12-cv-12831, 2013 WL 4012827
    (E.D. Mich. Aug. 6, 2013)

*Landis v. North Am. Co.,* 299 U.S. 248 (1936)

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................ 1

ARGUMENT ................................................................................... 3

    I.    **None of the Pending Cases Identified in Forbes' Motion Can Dispose of This Action** ........................................................ 4

        A.    **The Sixth Circuit's Decision in *Coulter-Owens*— Relating to the VRPA's "At Retail" Element—Will Not Affect This Matter Until After the Parties Engage in Discovery** ............................................... 4

        B.    **None of the Issues Being Considered in *Deacon* Are Relevant to This Case** ............................................ 8

        C.    **Forbes' Remaining Cases Have No Precedential Value and, In Any Event, Are Already Being Decided Against Its Position** ............................................ 10

    II.    **There Are No Other Advantages to a Stay; Rather, Delaying This Matter Will Only Harm Plaintiff and the Putative Class** ................................................ 16

CONCLUSION ............................................................................... 18

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Clinton v. Jones*, 520 U.S. 681 (1997)................................................................. 3, 18

*Landis v. North Am. Co.,* 299 U.S. 248 (1936)......................................................... 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................ 13

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ................................................ 13, 14

*Stanley v. Georgia*, 394 U.S. 557 (1969) ............................................................... 15

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ............................................. 14

**United States Circuit Court of Appeals Cases**

*Deacon v. Pandora Media, Inc.*, Case No. 12-17734, (9th Cir.),
    Dkt. No. 39 ...................................................................................................... 9

*Meade v. Pension Review and Appeals Committee,*
    966 F.2d 190 (6th Cir.1992) ........................................................................... 7

*Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393
    (6th Cir. 1977) ............................................................................................... 16

*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) ................ 14

*Thomason v. Amalgamated Local No. 863*, 438 F. App'x 358 (6th Cir. 2011) ........ 5

*Wysocki v. IBM Corp.*, 607 F.3d 1102 (6th Cir. 2010) ......................................... 14

**United States District Court Cases**

*Beydoun v. Holder*, No. 14-cv-13812,
    2015 WL 631948 (E.D. Mich. Feb. 13, 2015) .......................................... 3, 4

*Boelter v. Hearst Commc'ns, Inc.*, No. 15-cv-3934, 2016 WL 3369541
    (S.D.N.Y. June 17, 2016). ...................................................... *passim*

*Booth v. Appstack, Inc.*, No. 13-cv-1533, 2016 WL 3030256
 (W.D. Wash. May 25, 2016) ....................................................................... 13

*Coulter-Owens v. Time, Inc.*, No. 12-cv-14390,
 2016 WL 612690 (E.D. Mich. Feb. 16, 2016) ..................................... *passim*

*Del Vecchio v. Amazon.com*, No. 11-cv-0366, 2011 WL 1585623
 (W.D. Wash. Apr. 27, 2011) ....................................................................... 18

*Deluca v. Blue Cross Blue Shield of Michigan*, No. 06-cv-12552,
 2007 WL 715304 (E.D. Mich. Mar. 7, 2007)................................................. 7

*Family Serv. Ass'n of Steubenville, Ohio v. Wells Twp.*, No. 12-cv-135
 2014 WL 972178 (S.D. Ohio Mar. 12, 2014) ............................................. 16

*Halaburda v. Bauer Pub. Co., LP*, No. 12-cv-12831, 2013 WL 4012827
 (E.D. Mich. Aug. 6, 2013)......................................................................... 12

*LG Elecs., Inc. v. Eastman Kodak Co.*, No. 09-cv-0344
 2009 WL 1468703 (S.D. Cal. May 26, 2009) ............................................. 18

*Michael v. Ghee,* 325 F. Supp. 2d 829 (N.D. Ohio 2004) ..................................... 3

*Montez v. Chase Home Fin. LLC*, No. 11-cv-530
 2011 WL 2729445 (S.D. Cal. July 13, 2011) ............................................. 17

*Storey v. Attends Healthcare Products, Inc.*, No. 15-cv-13577
 2016 WL 3125210 (E.D. Mich. June 3, 2016) ............................................ 13

*Versa Corp. v. Ag-Bag Int'l. Ltd.*, No. 01-cv-544
 2001 WL 34046241 (D. Or. Sept. 14, 2001) ............................................. 16

## State Court Cases

*Brewer v. A.D. Transport Exp., Inc.*, 782 N.W.2d 475 (Mich. 2010) ................... 12

*Johnson v. Pastoriza*, 818 N.W.2d 279 (Mich. 2012) ........................................... 12

*Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180 (Mich. 2001) ......... 12

*World Book, Inc. v. Department of Treasury*,
  590 N.W.2d 293 (Mich. 1999) ........................................................................ 6

**Pending Cases**

*Coulter-Owens v. Time, Inc.*, Case No. 16-1321 (6th Cir.) ...........................*passim*

*Deacon v. Pandora Media, Inc.*, Case No. 151104 (Mich. S.C.) ...................3, 8-10

**State Statutes**

Mich. Comp. Laws Ann. § 445 et. seq ...........................................................*passim*

## PRELIMINARY STATEMENT

Plaintiff Brian Hall ("Plaintiff") alleges that Defendant Forbes Media LLC ("Forbes") violated Michigan's Preservation of Personal Privacy Act—which is popularly referred to as the Video Rental Privacy Act ("VRPA")—by unlawfully disclosing its *Forbes* magazine subscribers' information to data miners and other third party companies. These disclosures include each subscriber's name, address, and specific magazine subscription purchases ("Personal Reading Information"), along with other highly sensitive information, such as their marital status, health issues, ethnicity, net worth, and number of kids in the house. Forbes is making these disclosures behind its customers' backs and without their consent. By making these disclosures, Plaintiff Brian Hall alleges, Forbes has violated and *continues* to violate his and the other putative class members' statutorily protected right to privacy.

Through its instant Motion to Stay, Forbes asks the Court to stay *all* proceedings in this action pending the Sixth Circuit's decision in *Coulter-Owens v. Time, Inc.*, Case No. 16-1321, because, according to Forbes, the opinion "could dispose of Plaintiff's claims in this action, without the need for further expenditure of time and expense by the parties or the Court." (Mot. to Stay Action at 1-2.) Forbes request for a stay is misguided. First, Forbes ignores that, no matter what the Sixth Circuit decides, discovery will be needed here to determine whether

1

*Coulter-Owens* will have any effect at all. This fact is made plain by the first two pages of Forbes' supporting memorandum, where Forbes bases its entire motion on a present *factual dispute* between the parties, given that Plaintiff alleges he purchased his subscription "directly" from Forbes, but Forbes says that Plaintiff purchased through a third party, consistent with its Fourth Affirmative Defense.[1] (Memo. in support of Mot. to Stay Action (the "Memo.") at 1-2; *see also* dkt. 8 ("Answer") at 12.) And beyond this unresolved factual issue, Forbes also ignores that *Coulter-Owens* is on appeal from a summary judgment order, which, in turn, was derived from and dependent on a fully developed factual record built through discovery. Either way, the Sixth Circuit's decision in *Coulter-Owens* cannot have the dispositive effect Forbes anticipates *until* the parties conduct discovery.

Forbes also suggests that a stay "would have the added benefit of potentially allowing for resolution of the other issues," inasmuch as other courts—including the Michigan Supreme Court, a few district courts from the Southern District of New York, and the Ninth Circuit—are considering (or may consider) issues

---

[1]  Forbes notes that because the parties were discussing a possible early resolution, they have not yet engaged in discovery. (Memo. at 6.) Presently, however, the parties have conducted their Rule 26(f) conference and Plaintiff intends to propound interrogatories and document requests in short order. Those requests will, *inter alia*, seek information concerning the third party Forbes says that Plaintiff purchased his subscription from. To date, Forbes has refused to even disclose the identity of that third party or otherwise provide details concerning its specific relationship to Forbes.

potentially relevant here. (Memo. at 12-13.) But even Forbes admits that these courts are either not considering issues relevant to this litigation (as is the case for *Deacon v. Pandora Media, Inc.*, Case No. 151104) or are out of Circuit and, thus, will have no precedential value here (as is the case for the New York and Ninth Circuit cases). Thus, any resulting opinions will not be dispositive either.

Therefore, and because Forbes identifies no other reason justifying its request for an indeterminate stay, the Motion must be denied.

## ARGUMENT

"A district court may stay a case in order to allow a higher court in a separate case to settle issues of law that have bearing on the matter to be stayed." *Beydoun v. Holder*, No. 14-CV-13812, 2015 WL 631948, at *3 (E.D. Mich. Feb. 13, 2015) (citations omitted). When considering a stay, a district court must weigh: "[1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration." *Id.* (quoting *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004)). *See also Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). As the party seeking a stay, Forbes has the burden of demonstrating that such relief is warranted, *see Clinton v. Jones*, 520 U.S. 681, 708 (1997), and "must make out a

3

clear case of hardship or inequity in being required to go forward," *Beydoun*, 2015 WL 631948, at *3 (quoting *Landis*, 299 U.S. at 255).

Here, Forbes has not—and cannot—meet its burden. Most prominently, Forbes fails to identify a single case that will have a dispositive effect here. And because it has not done so, Forbes also cannot show that the other *Landis* factors are satisfied. Accordingly, the Motion must be denied.

## I.     NONE OF THE PENDING CASES IDENTIFIED IN FORBES' MOTION CAN DISPOSE OF THIS ACTION.

### A.     The Sixth Circuit's Decision in *Coulter-Owens*—Relating to the VRPA's "At Retail" Element—Will Not Affect This Matter Until After the Parties Engage in Discovery.

In *Coulter-Owens*, the Sixth Circuit will consider whether—under the facts of the case (which was decided at summary judgment)—the defendant was "engaged in the business of selling at retail," where both parties *agreed* that the plaintiff purchased her magazine subscriptions (which were published and fulfilled by Time) from a third party.[2] Until the parties engage in discovery here, however, the Sixth Circuit's decision *cannot* have any effect, dispositive or otherwise. Two plain observations demonstrate this fact.

---

[2] The VRPA states that "a person, or an employee or agent of the person, **engaged in the business of selling at retail**, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." Mich. Comp. Laws Ann. § 445.1712 (emphasis added).

First, Forbes entire position—i.e., that it was not "engaged in the business of selling at retail" because Plaintiff purchased his subscription "from a third-party agent [rather than] from Forbes directly," (dkt. 10-2 (Declaration of Nina LaFrance) ¶ 4)—contradicts the pleadings and is asserted as an affirmative defense. (*See* Memo. at 1-2; Answer at 12.) As such, no matter how the Sixth Circuit decides the "at retail" issue in *Coulter-Owens* (in a case where *it was undisputed that the plaintiff purchased from a third party*), here, discovery is required to determine whether Plaintiff purchased his subscription directly from the Defendant, as he alleges, (Compl. ¶ 30), or whether he purchased from a third party, as Forbes asserts in its Answer and Motion, (*see* Answer at 12; *see also id.* ¶ 30 (denying Compl. ¶ 30 "and further stat[ing] that Plaintiff purchased a subscription to Forbes from a third party reseller for a single year in 2009.")). Stated simply, even if the Sixth Circuit affirms in *Coulter-Owens* and even if Forbes moves for summary judgment on its "at retail" affirmative defense, Plaintiff would be entitled to discovery on Forbes' *factual* contention that he purchased his subscription from one of its third party agents. *See Thomason v. Amalgamated Local No. 863*, 438 F. App'x 358, 361 (6th Cir. 2011) (Vacating grant of summary judgment and citing "the oft-repeated rule in this Circuit that "when the parties have no opportunity for discovery, denying the Rule 56[(d)] motion and ruling on a summary judgment motion is likely to be an abuse of discretion.").

Second, and even assuming the Sixth Circuit affirms and Forbes can prove Plaintiff purchased from one of its third party agents, Forbes would still have to demonstrate that Forbes' relationship with its third party agent was the same as the relationship between Time and its reseller. Stated otherwise, because the Sixth Circuit's decision in *Coulter-Owens* will necessarily turn on the factual record in the underlying case—which was decided at summary judgment after the parties had *completed* discovery—it cannot have any dispositive effect here until the parties also engage in discovery.

What Forbes doesn't seem to understand is that the narrow issue on appeal in *Coulter-Owens* is a mixed question of law and fact: whether, under the facts of the case, the plaintiff's purchase of the defendant publisher's magazines through a third party were sales made by the defendant "at retail" (through a "middleman") or not (through a "reseller").[3] *See Coulter-Owens v. Time, Inc.*, No. 12-CV-14390, 2016 WL 612690, at *4 (E.D. Mich. Feb. 16, 2016). To decide the issue on

---

[3] The Michigan Supreme Court has recognized the distinction between "middlemen" and "resellers" with respect to "at retail" sales. *World Book, Inc. v. Department of Treasury*, 590 N.W.2d 293 (Mich. 1999), involved a publisher in Illinois using door-to-door salespeople in Michigan to solicit orders for encyclopedias. The salespeople took orders and collected money from the Michigan customers, and sent the orders off to the publisher. *Id.* at 295-96. The publisher then shipped the encyclopedias directly to the customer. The court there held that, under those facts, the "sale[s] at retail" occurred in Illinois, not Michigan, i.e., that it was the publisher—not the salespeople—who was selling the encyclopedias "at retail." *Id.* at 298.

summary judgment, this Court looked to the specific "resale agreements" between

Time and the third parties that sold Time's magazines:

> Defendant has multiple "resale agreements" with third-parties, such as
> Magazines.com. These resale agreements require the third-parties to
> sell subscriptions to customers, while defendant simply delivers the
> subscriptions. In these resale agreements, each particular reseller
> agrees to "provide a toll free customer service number" for purchasers
> of subscriptions. Moreover, the reseller acknowledges being the
> "retailer and reseller of all magazine subscriptions." The agreements
> reflect that the third-party is the reseller of the magazines and the
> point of contact for customers. This is different than a subscription
> agent who essentially serves as a middleman.

*Coulter-Owens*, 2016 WL 612690, at *4. This finding—that there was no disputed

issue of fact regarding the "at retail" issue—was the only basis for this Court's

granting of summary judgment and is the one the Sixth Circuit will review. *Deluca*

*v. Blue Cross Blue Shield of Michigan*, 2007 WL 715304, at *1 (E.D. Mich. Mar. 7,

2007) (quoting *Meade v. Pension Review and Appeals Committee,* 966 F.2d 190,

194 (6th Cir.1992) (emphasis in original) ("[t]he Sixth Circuit repeatedly has stated

that '[t]he general rule is that the circuit court will not address issues on appeal that

were not raised *and* ruled upon below,'").

Here, and in line with this Court's decision in *Coulter-Owens*, significant

discovery would be needed to determine the nature of the relationship between

Forbes and the "third party agents" that sell magazines on its behalf. Indeed, given

that this Court placed emphasis on the specific agreements in *Coulter-Owens* (and

their consistent use of the word "reseller"), the fact that, here, Ms. LaFrance refers

7

to Forbes' purported "resellers" as *agents* already speaks against Forbes' position. *See Coulter-Owens*, 2016 WL 612690, at *4 (distinguishing a "reseller" from a "subscription *agent* who essentially serves as a middleman.") (emphasis added).)

As such, no matter what the Sixth Circuit decides in *Coulter-Owens*, its decision will not (and cannot, until discovery is completed) have any dispositive effect here.

**B.   None of the Issues Being Considered in *Deacon* Are Relevant to This Case.**

Next, because the Michigan Supreme Court isn't considering *any* issues relevant to this matter, any decision issued in *Deacon* has no potentiality of being dispositive here. In fact, Forbes' entire reliance on *Deacon*—i.e., that one basis for the district court's dismissal of the case was "that the plaintiff failed to allege Pandora 'sells' sound recordings because 'the sale is between the user and a third-party vendor, not Pandora.'" (Mot. at 3)—wasn't even appealed to the Ninth Circuit. Thus, *Deacon* is hardly a basis for staying this case.

*Deacon* is a case about Pandora's online music streaming service, which delivers music to registered users over the Internet, and practice of disclosing the listening habits of its listeners to third parties. In its certification order, The Ninth Circuit explained that:

> With respect to his claim for violation of the VRPA, the district court
> first concluded that Deacon had standing to bring his VRPA claim
> against Pandora. The district court went on to conclude that the claim
> should be dismissed because Deacon had failed to adequately allege
> that the VRPA applied to Pandora because there were no allegations
> in the complaint showing that Pandora is "engaged in the business of
> selling at retail, renting, or lending . . . sound recordings." In reaching
> this conclusion, the district court analyzed the terms: "renting,"
> lending," and "sells."

*Deacon v. Pandora Media, Inc.*, Case No. 12-17734, (9th Cir.), Dkt. No. 39, at 5.

The plaintiff appealed "the district court's determination that . . . [he] failed to

adequately allege that Pandora is engage in the business of 'renting' or 'lending'

sound records"—but *did not challenge* the district court's findings that he "failed

to adequately allege that Pandora is engage in the business of 'selling at retail'

sound recordings." *Id.* at 9, n. 3. Thus, the Ninth Circuit certified the following

question to the Michigan Supreme Court:

> Has Deacon . . . adequately alleg[ed] that Pandora is the business of
> "renting" or "lending" sound recordings, and that he is a "customer"
> of Pandora because he "rents or "borrows" sound recordings from
> Pandora?

*Id.* at 12.

As Forbes admits, the issues certified to the Michigan Supreme Court have

nothing to do with this case. (*See* Memo. 7-8.) Thus, no matter how the Michigan

Supreme Court interprets the terms "renting," "lending," or "borrowing," its

interpretation will have no effect here, given that both parties agree that Plaintiff

*purchased* his subscription to *Forbes* magazine. (Compl. ¶ 30; Answer ¶ 30.) Thus,

9

Forbes cannot show that *Deacon* has even an outside chance of having a dispositive effect here.

Further, and as with any decision from the Sixth Circuit in *Coulter-Owens*, if the Michigan Supreme Court did inexplicably explore the VRPA's "at retail" requirement—even though that issue was *not* appealed by the plaintiff, was *not* at issue before the Ninth Circuit, and was *not* certified to the Michigan Supreme Court—discovery would still be necessary to resolve the manifest conflict between the pleadings (where Plaintiff alleges he purchased directly from Forbes) and Forbes' affirmative defense (wherein it claims that Plaintiff purchased from a third party). *See supra* § I.A.

Accordingly, there is no chance that any decision issued in *Deacon* will have a dispositive effect here.

### C.     Forbes' Remaining Cases Have No Precedential Value and, In Any Event, Are Already Being Decided Against Its Position.

Finally, the fact that Forbes identified a few out-of-district cases that could (potentially) touch on issues relevant to this case does not support its request for a stay. In particular, Forbes points out that a few cases from the Southern District of New York are considering whether the recent VRPA amendments are retroactive and whether the VRPA runs afoul of the First Amendment. (Mot. at 8-10.) And Forbes also notes that the Supreme Court remanded the *Spokeo* matter to the Ninth Circuit to determine whether the alleged statutory violations there were sufficiently

10

"concrete" for the purposes of Article III. (*Id.* at 11-12.) None of these cases

support Forbes' request for a stay.

First, and despite Forbes' misleading headers, none of these cases are before

"higher courts" that could produce precedential—or dispositive—opinions. Indeed,

while Forbes *could have filed* a Rule 12 motion based on the recent VRPA

amendments or the Supreme Court's recent decision in *Spokeo*, it instead chose to

answer the Complaint. Thus, these "other" cases cited by Forbes won't even carry

*persuasive* weight here until a dispositive motion is filed.

Moreover, even if these cases might *influence* a future decision in this case,

they are far more likely to weigh in Plaintiff's favor. For example, Forbes points to

the matter of *Boelter v. Hearst Communications, Inc.*, No. 15-cv-05671 (S.D.N.Y.),

as its best example of where "defendants [have argued] that the [recent VRPA

amendment] applies retroactively to bar claims of plaintiffs in existing litigation

that have not, and cannot allege actual damages." (Memo. at 8.) But contrary to

Forbes' anticipated result, the court in *Boelter* recently found—in a lengthy, well-

reasoned opinion—that the VRPA amendments *do not* apply retroactively. *Boelter*

*v. Hearst Commc'ns, Inc.*, No. 15-cv-3934, 2016 WL 3369541, at **4-6 (S.D.N.Y.

June 17, 2016). This makes sense, given that the VRPA amendments lack any

mention of retroactivity, include a future enacting date, and alter substantive rights

and agreements (i.e., given that prior to the amendments, a consumer suffering

11

injury to her intangible—but nevertheless real—privacy interest without any consequential monetary loss or bodily harm (*i.e.*, actual damages) held a private right under the VRPA; but after the amendment, such a consumer no longer does). *See Frank W. Lynch & Co. v. Flex Techs., Inc.*, 624 N.W.2d 180, 185 (Mich. 2001) (There is a "strong presumption against the retroactive application of statutes in the absence of a clear expression by the Legislature that the act be so applied."); *Johnson v. Pastoriza*, 818 N.W.2d 279, 287 (Mich. 2012) (quoting *Brewer v. A.D. Transport Exp., Inc.*, 782 N.W.2d 475, 479 (Mich. 2010) ("[P]roviding a specific future effective date and omitting any reference to retroactivity supports a conclusion that a statute should be applied prospectively only.").

Likewise, Forbes also points to *Boelter* as an example of a "pending First Amendment challenge[]" to the VRPA. (Memo. at 10.) But again—and consistent with this Court's rulings in other VRPA cases—the *Boelter* court came out against Forbes' position and found that "[t]he VRPA is sufficiently tailored to meet the state's goals without intolerably burdening Defendant's speech. Therefore, the VRPA is not unconstitutional as applied to Defendant." *Boelter*, 2016 WL 3369541, at *12. *See also Halaburda v. Bauer Pub. Co., LP*, No. 12-CV-12831, 2013 WL 4012827, at *7 (E.D. Mich. Aug. 6, 2013) (Steeh, J.) (rejecting First Amendment challenge in similar VRPA case).

Finally, and to assuage Forbes' remaining concerns, it must also be noted that the *Boelter* court already agreed—consistent with many other decisions issued after the Supreme Court's *Spokeo* ruling—that plaintiffs *do* have standing when they allege violations of statutes that specifically proscribe certain substantive conduct. *See, e.g.*, *Boelter*, 2016 WL 3369541, at *3 (holding that a VRPA plaintiff had standing under *Spokeo*); *Storey v. Attends Healthcare Products, Inc.*, 2016 WL 3125210, at *4 (E.D. Mich. June 3, 2016) (concluding that plaintiffs had Article III standing when they claimed that the defendant made false representations about a product's qualities in violation of a consumer protection statute, even if they did not suffer additional harm as a result of the alleged defect in the product); *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (concluding that receiving junk telephone calls in violation of the Telephone Consumer Protection Act is concrete and not procedural in nature). In *Spokeo*, the Supreme Court was concerned with cases where a procedural violation is "divorced from [the] concrete harm" that the statute is designed to protect against. 136 S. Ct. at 1549. A procedural statute, by definition, typically does not tell the regulated entity *what* to do—it tells the regulated entity *how* (or how not) to do something. *Cf. Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1550 (2016) (using "fail[ure] to provide [a] required notice" to a third party as an example of a "bare procedural violation"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 (1992)

13

(describing "procedural requirement for a hearing prior to denial of [a] license application" and "procedural requirement for an environmental impact statement before a federal facility is constructed"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (treating denial of "the ability to file comments on some Forest Service actions" as "procedural injury"). In such procedural rights cases, courts must assess whether the procedural violations "entail a degree of risk" to the statutorily defined interest "sufficient to meet the concreteness requirement." *Spokeo*, 135 S. Ct. at 1550. And when they have, "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id*. at 1549-50.

But that principle is inapplicable when a statute—like the VRPA—directly regulates an actor's substantive conduct. Here, Forbes' disclosure of its subscribers' confidential reading choices is not a bare procedural violation divorced from any concrete harm. In fact, *it is not a procedural violation at all*. Rather, the VRPA directly regulates the substantive privacy interest at issue. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (rejecting argument that "impermissible disclosures of one's sensitive, personal information" was a mere technical violation of a statute designed to protect video viewing history because such disclosures were precisely what the statute was intended to prohibit). The VRPA's prohibition on the disclosure of personal information "do[es] not deal

14

with the procedure or process for enforcing" consumers' privacy rights; it actually defines those rights as a matter of substantive law. *Wysocki v. IBM Corp.*, 607 F.3d 1102, 1106-07 (6th Cir. 2010).

Here, because Forbes "deprived [Hall] of [his] right to keep [his] information private … and unjustly retained the economic benefit the value of that information conferred," *Boelter*, 2016 WL 3369541, at *3; *see also Stanley v. Georgia*, 394 U.S. 557, 565 (1969) ("[The appellant] is asserting the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home."), Plaintiff alleges a violation of a substantive—not procedural—right. Thus, and consistent with *Boelter*, there's no reason to believe that the Supreme Court's decision to remand *Spokeo* "to the lower court when it found that the lower court failed to consider the concreteness of the plaintiff's alleged injury . . . [should upset the conclusion that Forbes'] violation of the VRPA, as alleged, caused a concrete and particularly injury to Plaintiffs." *See Boelter*, 2016 WL 3369541, at *3, n. 4.

In the end, because Forbes has not identified *any* forthcoming decision that stands to have a dispositive effect here, its Motion must be denied.

15

## II.   THERE ARE NO OTHER ADVANTAGES TO A STAY; RATHER, DELAYING THIS MATTER WILL ONLY HARM PLAINTIFF AND THE PUTATIVE CLASS.

Given that Forbes has failed to identify any cases with dispositive capabilities, it should come as little surprise that the remaining factors governing Forbes' request aren't met either.

First, as noted above, because this matter will proceed no matter how Forbes' selected cases are resolved, a stay would—at best—only delay the inevitable. Indeed, the question Forbes presents is essentially whether to begin discovery immediately or, as Forbes suggests, wait months (if not longer) *and then conduct discovery*. Thus, judicial resources would not be conserved by a stay here. *Versa Corp. v. Ag-Bag Int'l. Ltd.*, 2001 WL 34046241, at *5 (D. Or. Sept. 14, 2001) (denying stay because it was "quite apparent that litigation [was] inevitable, regardless of the outcome [of a pending appeal filed in the United States Court of Appeals for the Federal Circuit]" and, thus, "granting the stay would merely delay the inevitable").

Second, Forbes' requested stay would not serve the public interest. Stays are not favored and, therefore, "courts must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Family Serv. Ass'n of Steubenville, Ohio v. Wells Twp.*, 2014 WL 972178, at *3 (S.D. Ohio Mar. 12, 2014) (citing *Ohio Envtl. Council v. U.S.*

16

*Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977).) As such, where pending cases "cannot be determinative of the issues presented . . . [a] stay will not serve the public interest." *Id.* As discussed above, none of Forbes' cited cases will have a determinative effect here. As such, there's no risk of the Court's efforts "being undone by a decision from the Sixth Circuit," (Memo. at 22), no reason to unnecessarily delay the efficient resolution of this case, and no basis for Forbes' conclusion that a stay is in the public interest.

Third, any stay entered in this case would unnecessarily cause hardship to Plaintiff and the putative class members, *particularly* because Forbes' unlawful conduct is ongoing. To this point, Forbes only argues that because "Plaintiff seeks actual damages in the form of the monies he already paid to Forbes for his subscription and statutory damages," a stay will not cause him additional harm. (Mot. at 19-20.) But Forbes ignores that Plaintiff also seeks *injunctive* relief here, which, if granted, would put a stop to Forbes' on-going (and unlawful) practice of disclosing its subscribers' Personal Reading Information without their consent. (Compl. ¶ 67.) As such, a stay would delay Plaintiff's and other Michiganders' ability to obtain an injunction, which is, standing alone, reason enough to deny the Motion. *See Montez v. Chase Home Fin. LLC*, 2011 WL 2729445 at *2 (S.D. Cal. July 13, 2011) (finding a "fair possibility that a stay would harm Plaintiffs and members of the putative class" where plaintiffs "not only [sought] damages, but

17

also injunctive relief"); *see also Del Vecchio v. Amazon.com*, 2011 WL 1585623, at *1 (W.D. Wash. Apr. 27, 2011) (denying motion for discovery stay because "plaintiffs could suffer prejudice by a . . . stay, in part because they seek to enjoin on-going allegedly wrongful conduct.").

Further, and because Forbes seeks a stay of indeterminate duration, Plaintiff stands to suffer additional harm if he must wait months (or longer) before conducting discovery or proceeding to trial. While Forbes assures the Court that a litigation hold is in place, it's inevitable that, over time, witnesses' memories will fade and documents will become misplaced. *See LG Elecs., Inc. v. Eastman Kodak Co.*, 2009 WL 1468703, at *2 (S.D. Cal. May 26, 2009) (denying motion to stay where "delay could result in loss of testimonial and documentary evidence" and noting the Supreme Court's recognition "that delaying a trial increases 'the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts.'") (quoting *Clinton*, 520 U.S. at 708)). And because discovery will be needed here regardless, there's no reason to risk harming Plaintiff's access to evidence.

## CONCLUSION

Forbes fails to identify a single reason why a stay is appropriate here. There are no dispositive motions before the Court that could possibly be affected by a case in this or any other jurisdiction. And even if there were, Forbes doesn't cite

any cases that would compel a determinative result at this stage of the case, before *any* discovery is conducted. Therefore, because a stay would do nothing other than unnecessarily delay this matter, the Motion must be denied.

Respectfully submitted,

**BRIAN HALL**

Dated:  June 30, 2016          By:   /s/ Benjamin S. Thomassen
                                             One of Plaintiffs' attorneys

                                             Ari J. Scharg
                                             ascharg@edelson.com
                                             Benjamin S. Thomassen
                                             bthomassen@edelson.com
                                             EDELSON PC
                                             350 North LaSalle Street, Suite 1300
                                             Chicago, Illinois 60654
                                             Tel: 312.589.6370
                                             Fax: 312.589.6378

                                             Henry M. Scharg (P28804)
                                             hmsattyatlaw@aol.com
                                             LAW OFFICE OF HENRY M. SCHARG
                                             718 Ford Building
                                             Detroit, Michigan 48226
                                             Tel: 248.596.1111
                                             Fax: 248.496.1578

                                             *Counsel for Plaintiff and the Proposed Class*

19